MAGOWAN and others *v.* ST. LOUIS RAILWAY SUPPLIES MANUF'G Co.*

*(Circuit Court, E. D. Missouri. June 4, 1883.)*

PLEADING—COUNTER-CLAIMS—FINAL SETTLEMENT.

Where A., a manufacturer, who had agreed to consign a full line of his goods, of the best quality, to B., and not to sell to any one else in the place where B. did business, brought suit against B. for a balance alleged to be due for goods consigned under the contract, and B. answered first that there had been a full and complete final settlement of all their accounts between him and A., and set up ⟩

*Reported by B. F. Rex, Esq., of the St. Louis bar.

three counter-claims, alleging, in the first, that a certain sum had been over-paid to A. at the time of the final settlement, by mistake, without stating specifically how the error occurred; in the second, that A. had violated his contract by selling goods to other parties in the place where B. did business, but without stating what goods were sold, or their value; and in the third, alleging generally that he was damaged in a certain sum by reason of the goods consigned not having been of the agreed quantity: *held*, on demurrer to the counter-claims, that they were all bad, because inconsistent with the defense of a final settlement, and also that neither of them stated facts constituting a cause of action.

This is a suit for $12,155.68, alleged to be due plaintiffs for goods sold and delivered to defendants. The plaintiffs are partners doing business under the firm name of the Trenton Rubber Works, and are manufacturers of rubber goods. Their transactions with the defendants were under and in pursuance of the terms of a contract between them and defendants, the material clauses of which are as follows:

"*First*, the parties of the first part [plaintiffs] agree to consign to the parties of the second part a full line of their rubber goods, such as belting, hose, and packing, and, to the best of their ability, will keep the parties of the second part supplied with a full and marketable assortment; *second*, the parties of the first part agree to make all invoices sent to the parties of the second part at the lowest cash prices and best discounts, and to further allow the parties of the second part a further discount of 10 per cent. at monthly settlements; *third*, the parties of the first part agree not to sell or consign any goods to any other house in St. Louis, or vicinity, during the existence of this agreement; * * * *fifth*, all goods shall be fully warranted by the party of the first part, and shall be equal to the best goods in the market, of their respective kinds, and every invoice shall be accompanied with the regular warranty of the party of the first part; * * * *ninth*, the parties of the second part are to render an account of sales on the fifteenth of each month, and remit to parties of the first part, with draft for same, and also render an account of stock on hand; *tenth*, on the dissolution of this agreement the parties of the second part are to retain all cut rolls of belting, and pay for same; *eleventh*, thirty days' notice shall be given by either party of their intention to dissolve this agreement."

The contract was terminated by plaintiffs, who allege that at the time of its termination defendant owed them for goods consigned under it, and sold and unpaid for, $1,151.28, and $11,005.40 for "cut rubber belting," and for goods belonging to plaintiff at the time of the dissolution of the contract in possession of defendants, which they refused to return, and kept. The answer of defendant prior to the sixth defense sets out a full and complete settlement of all the matters complained of in the petition. The sixth, seventh, and eighth defenses set up in the answer are as follows:

"(6) And defendant, further answering, says that the plaintiff did not keep or perform said contract on their part, but broke the same in this: that plaintiff failed to keep defendant supplied with a full and marketable assortment of said goods, and the goods furnished were not equal to the best in the market of their respective grades, but were many of them defective and unmerchantable, and defendant was compelled to replace defective goods sold to customers, and did so to an amount in value of $830.74, which was reported by defendant to plaintiff, and by them allowed, and because of plaintiff's failure to supply defendant with goods it was compelled to buy and did buy in the market, to supply their trade, goods aggregating in value $1,352.39, which went into defendant's account sales as party plaintiff's goods, and were treated by both parties as advancements, for which defendant was entitled to credit. At the time of the aforesaid accounting there was due from defendant for goods unsold $1,922.01, as against the same two items of $1,352.39 and $830.74, and it was mutually understood at the time that the account was accordingly adjusted, but defendant has since claimed that that was a mistake in said adjustment, and that there is now due it from plaintiffs, on account of the matters last aforesaid, a balance of $261.12, for which it asks for judgment as a counter-claim. (7) And defendant, further answering, and by way of counter-claim, says that the plaintiffs broke said contract in this: that while said contract was in force, and defendant was selling plaintiffs goods thereunder, the plaintiffs sold and consigned large quantities of goods to other houses in St. Louis and vicinity, to-wit: S. M. Rumsey & Co., N. O. Nelson & Co., Fox, Corby & Co., Wabash, St. Louis & Pacific Railway Company, and many others, whereby defendant lost its profits on the sales to said purchasers under said agreement, and was greatly damaged to the amount of $20,000, for which it asks judgment, with costs. (8) And for further answer, and by way of counter-claim, defendant says that plaintiffs broke said contract in this: that the goods so furnished to the defendant were not equal to the best goods in the market of their respective kinds, but were exceedingly defective in quality, and many of them were returned to defendant by the purchasers, and defendant lost their trade in rubber goods, and were prevented from making the profits that they would have otherwise made by the sale of plaintiff's goods under said contract, by all which it was greatly damaged in the further amount of $1,000, for which it asks judgment and costs."

The plaintiff demurred to the sixth, seventh, and eighth counts of the defendant's answer, on the ground that "the facts set out in said three counts do not state facts sufficient to constitute any defense to plaintiff's action, nor is there any cause of action stated in either of said counts against these plaintiffs."

*G. M. Stewart,* for plaintiffs.

*John G. Chandler,* for defendants.

TREAT, J. It is plain, from an analysis of the pleadings, that these so-called defenses or counter-claims cannot be upheld. As counterclaims they do not comply with the requirements of pleadings, and

are also inconsistent with the other defenses. If the matters were included in the settlement, they cannot be set up against it, except for fraud, etc. If these were errors merely, they should be specifically stated. If other matters were not included, the answer should also state and set out specifically said matters, in order that definite issues may be tried. It is impossible, from the reading of the answer, to understand whether the alleged counter-claims, Nos. 7 and 8, were matters that entered into the settlement or not. If they did, then the settlement must be assailed, as in No. 6; and assailed specifically, which is not done in No. 6.

The demurrer to parts of the answer is sustained.